**THE W. S. HOLBROOK. THE CHARLES RUNYON. NEW YORK & PORTO RICO S. S. CO. v. FRED B. DALZELL & CO., Inc,**

(District Court, S. D. New York. February 28, 1922.)

**1. Towage ⊜⟶15(2)—Evidence held sufficient to show negligence of tugs, but not of tug master directing tugs.**

In libel for damages to a ship in tow of tugs by collision with a pier, evidence *held* sufficient to show that negligence of the tugs caused the collision, but insufficient to show that the tug master, directing the tugs from the ship, was negligent.

**2. Towage ⊜⟶11(3)—Tug, obeying improvident order, held at fault.**

Even if one of several tugs, towing a ship through a gap into a basin, permitted the hawser to become slack, because of an order to stop by some one on the ship, *held*, that the tug would have been at fault in obeying such an improvident order, though, if the order had come from one of the ship's men, without authority of the tug master in command of all the tugs, the ship would have been contributorily negligent.

**3. Towage ⊜⟶11(2)—Tugs held not responsible in rem for orders of tug master.**

For orders of a tug master on board a ship, which came into collision with a pier while being towed through a gap into a basin, *held*, that the tugs could not be held responsible in rem.

**4. Towage ⊜⟶11(2)—Towing company held liable for negligence of its tug master.**

A towing company, which, because its own tugs were engaged, hired others to tow a steamship to a berth, would be liable for damages to the ship caused by the orders of its tug master, though as to third parties the ship would be liable.

In Admiralty. Libel by the New York & Porto Rico Steamship Company against Fred B. Dalzell & Co., Inc., and the tugs W. S. Holbrook and Charles Runyon. Decree for libelant against libelee last named. Decree affirmed 294 Fed. 911.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark, of New York City, of counsel), for libelant.

Alexander & Ash, of New York City (Peter Alexander, of New York City, of counsel), for respondent Fred B. Dalzell & Co., Inc.

Bigham, Englar & Jones, of New York City (L. J. Matteson and R. F. Shaw, both of New York City, of counsel), for claimant Holbrook.

Foley & Martin, of New York City (William J. Martin and George V. A. McCloskey, both of New York City, of counsel), for claimant Crew Transp. Co.

MACK, Circuit Judge. This is a libel by the owner of the steamship Coamo (steel screw steamer with passenger accommodations, 4,-384 tons gross and 2,815 tons net register, 377.2 feet long, 46.1 feet beam) to recover damages sustained by the Coamo on the morning of September 10, 1917, by reason of a collision with the northwest corner of Pier 38, Atlantic Basin, Brooklyn, while being assisted through the gap by the tugs W. S. Holbrook and Charles Runyon.

The Coamo was inward bound on one of her regular trips from Porto Rico to New York, and, in anticipation of her arrival, her owner, the libelant, had engaged Fred B. Dalzell & Co., Inc., to meet her with two

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tugs and assist her into her berth at Pier 35, on the upper or northerly side of the Atlantic Basin, near to the entrance. The Dalzell Company was advised by the libelant when the Coamo left quarantine, and, not having any of its own tugs then available, sent its dispatcher down to the Battery to hire other tugs to perform the service. For this purpose the W. S. Holbrook and the Charles Runyon were engaged.

[1] The Coamo proceeded up the bay under her own steam, and upon reaching Buttermilk Channel was met by the tugs Holbrook and Runyon. Capt. Ellis, master of the Holbrook, went on the steamer's bridge and assumed charge of the docking of the Coamo; with the tug master on the bridge were the master and third officer, and a quartermaster, who was at the wheel; the chief officer was on the forecastle head, and the second officer aft. The weather was clear, the tide ebb, the wind moderate N. W. The master of the Coamo told the tug master, when he came aboard, that the steamer had hit coming in the time before and that she was a slow-maneuvering ship.

In order for the Coamo to reach her berth at Pier 35, it was necessary for her to enter a 300-foot gap, which forms the entrance to Atlantic Basin. The pier at the north side of the entrance is known as Pier 33, and that on the southerly side as Pier 38. The gap between the two piers is about 300 feet wide, and the end of each pier facing the gap is approximately 175 feet. The Holbrook was made fast on the Coamo's starboard bow, and the Runyon ran a line from her stern bitts to the steamer's port quarter. When the Coamo was astride the gap at a distance of from 75 to 100 feet from the entrace, Capt. Ellis ordered that the Runyon pull the Coamo's stern up stream, the Holbrook push on the starboard bow, the Coamo's helm to be put hard aport and the engines worked slow ahead. Outside the gap the tide was flowing down, and the Holbrook was to hold the Coamo's bow from sagging with the tide down on Pier 38, while the Runyon was to keep her stern from sagging by pulling up stream. Within the gap was slack water.

As the steamer entered the gap, her bow swung within 10 or 20 feet of the face of the Pier 33, and, in order to avoid a collision, her engines were stopped and reversed. The evidence is conflicting as to whether this swing close to Pier 33 was due principally to the effect of the slack water or the pushing of the Holbrook  The Holbrook witnesses and Capt. Ellis contend that, as soon as the steamer entered the gap, the Holbrook's engines were reversed to overcome the tendency of the slack water to throw the Coamo's bow towards Pier 33, while the Coamo's witnesses maintain that the difficulty was occasioned by the continued pushing of the Holbrook on the starboard bow. On this point I am inclined to accept the version of the Coamo's witnesses. While there is this conflict as to whether, when the order to stop came from the steamer, the Holbrook was going ahead or astern, nearly all the witnesses agree that the whistle to stop was not promptly obeyed, but that Capt. Ellis had to shout and swear. I find, therefore, that the initial fault contributing to the collision with Pier 38 was that of the Holbrook, in failing promptly to stop her engines, when ordered so to do as the steamer swung into the gap.

[2] When the Coamo reversed her engines and went astern 60 or 70 feet, the Runyon for some reason stopped pulling the steamer's stern up stream, with the result that the hawser became slack, and the steamer sagged down with the tide, and her starboard side a little abaft of amidships came into collision with the outside corner of Pier 38. The steamer in the meanwhile had started ahead hard aport, but not in time to overcome the tide and avert the collision. The only defense of her action offered by the Runyon is that she was ordered to stop by some one on the steamer's bridge. But this is denied by the witnesses for the Coamo as well as by the tug master in command. The master of the Runyon admitted that the signal received might have been interpreted merely as an order to slow down and not to stop, and consequently, if any order were given, I do not believe it would have been intended, or could reasonably have been interpreted, as more than an order to slow down and be on guard on account of the astern movement of the Coamo. Certainly there was no justification for permitting the hawser to become slack and the steamer to sag. Even if an unequivocal stop order had been given, and I do not feel justified in so finding, the Coamo would have been at fault in obeying such an improvident order (Navigazione Generale Italiana v. Timmins [C. C. A. 2d Circuit] 278 Fed. 895, although, if the order had come from one of the steamer's men without authority from the tug master in command, the ship also would have been contributorily at fault.

[3, 4] Upon the record I am not satisfied that the tug master in command was chargeable with any fault, either in respect of his directions to the tugs or his orders to the ships. However, I understand that under Judge Hand's opinion in The Mexpet, decided January 11, 1921,[1] and now on appeal, if he were at fault in respect of any of his directions to any of the tugs, the tug would none the less be answerable in rem, because, according to that decision, the rule is:

"Each tug is responsible if she individually contributes to the accident, but only in case she does. If she does, it is no excuse that she has followed the directions of another tug's master."

Of course, in respect of the orders of the tug master in command to the steamer, the tugs could not be held responsible in rem. The Sarnia (C. C. A.) 261 Fed. 900; The Coamo (C. C. A.) 267 Fed. 686. For such orders the ship would be responsible to third parties, but as between the ship and the towing company, which supplied his services, the responsibility would rest upon the latter. Navigazione Generale Italiana v. Timmins, supra.

Despite the mutual recriminations of the tug master in command and the master of the Coamo, the evidence, in my judgment, does not satisfactorily establish the fault of either. Possibly the accident would not have occurred if the steamer had not gone so far astern after once entering the gap. But the Coamo was trying to avert a collision with Pier 33, and had no reason to suspect that the Runyon would permit her stern to sag. The evidence regarding the alleged order to the Runyon to stop has already been disposed of. The charge of the tug

1 Reversed on appeal. See 288 Fed. 718.

master in command, that the wheel was wrongly put to starboard, is not established. The quartermaster testifies (and was corroborated by the ship's captain) that he acted only on the orders of, the tug master. Possibly, when the ship was sent astern, the wheel was turned to starboard in order to throw her stern to port. Although, as I have said, negligence has not satisfactorily been proved against either the tug master or the ship's captain, I am of opinion that the tug master was in command and responsible for the orders given, although possibly he may have looked to the ship's captain for advice.

The libelant, in its pleadings and at the trial, sought to charge Dalzell & Co. only for the fault attributable to the tug master in command. It is consequently unnecessary for me to consider whether Dalzell & Co. might be charged with responsibility for the fault of the tugs.

No fault having been satisfactorily proved against the tug master in command, the decree may be entered against the tugs only.

⚙⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes